UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 19-00189 (TSC) |
| | : | |
| JEREMY LORENZO STEVENSON, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM
## IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial Detention of defendant Jeremy Lorenzo Stevenson under 18 U.S.C. §§ 3142(e).

### FACTUAL BACKGROUND

At his initial appearance on June 6, 2019, when the defendant was instructed to raise his right hand to be placed under oath, he instead raised a single index finger invoking a well-known symbol of support for the terrorist organization ISIS (the Islamic State of Iraq and al-Sham) (reporting on this symbolic gesture attached as Exhibit A).

This was not an accident or an aberration. The defendant came to the attention of the Federal Bureau of Investigation (FBI) in early 2017 because he had donned a mask and taunted patrons at a Washington, D.C., bar by displaying ISIS propaganda from his cell phone, including photographs of the ISIS flag and a video depicting a beheading at the hands of an ISIS militant. The incident occurred on January 19, 2017, during the week of the presidential inauguration, and the FBI identified the defendant as the perpetrator later that year.

The FBI spoke with the defendant twice in the summer of 2017. The defendant defended ISIS beheadings during these interviews, comparing such acts to death sentences handed down in

1

our criminal justice system. The defendant explained that he searched the internet for ISIS videos, including beheading videos and videos where ISIS leadership explained its mission and purpose. The defendant also said that he had communicated via Facebook with ISIS-connected individuals who had attempted to recruit him to join ISIS. According to the defendant, a Facebook user had asked if he wanted to join ISIS and urged him to take Arabic language classes. The defendant reported to the FBI that he did not actually intend to join ISIS, but that he told the recruiter that he wanted to join in order to learn more information. The defendant also said that the ISIS recruiter had asked whether the defendant wanted to carry out a mission in Washington, D.C.[1] Data obtained through legal process includes that the defendant conducted concerning internet searches in June 2017, including "how to join ISIS," and "isis cut off police head".

On October 29, 2017, the defendant posted to his Facebook account a photograph of him with what appears to be a handgun in his belt buckle (Exhibit B). The defendant has a history of making concerning threats with firearms. For example, on April 1, 2016, the defendant called 911 and threatened to shoot police officers at the Metropolitan Police Department's Seventh District.[2] The defendant's Facebook account also includes photographs of controlled substances depicted with cash (Exhibit D).

The defendant also made concerning statements to law enforcement when he was stopped by officers of the Metro Transit Police Department for failing to pay bus fare on January 2, 2018.

---

[1] The FBI obtained through legal process some of the content of the defendant's communications with the purported ISIS recruiter. The data obtained indicates that the defendant initiated the online conversation by writing that he wants to join. The purported recruiter responded by asking why, and the defendant wrote that he believes in faith. There appeared to be language barriers in the exchange, and the defendant may have been utilizing an online translation tool to communicate in Arabic. The purported recruiter did not appear to acknowledge any connection to ISIS or any other terrorist group, and did not say anything about a mission in Washington, D.C.

[2] In addition to prior criminal convictions, the defendant has been arrested numerous times over the past five years, on charges including: assault, threats, assault on a police officer, failure to obey a police officer, and consumption of marijuana in a public place. On at least two of those occasions, the defendant was given the benefit of diversion programs resulting in dismissal of criminal charges.

Case 1:19-cr-00189-TSC   Document 5   Filed 06/11/19   Page 3 of 9

During the course of the stop, the defendant uttered several unprovoked statements, including: (1) "I should go overseas and let them all fuck you up"; (2) "They're gonna come from other countries and kill all of you. I hope they do."; (3) "You should just shoot me. I'll do something to make you shoot me."; and (4) "I'll never pay for Metro. Even if I did 30 years in jail, I'd come out and still not pay. That's my hard-earned money." (Exhibit E.)

The facts giving rise to this criminal prosecution include that the defendant unlawfully distributed methamphetamine to an undercover law enforcement officer (UC) on several occasions in 2019. The indictment charges the defendant with distribution on two of those occasions: March 19 and April 1, 2019. On both occasions, the defendant distributed the methamphetamine inside the UC's car, where a hidden camera recorded the encounters. The defendant's face is clearly visible in the video footage. During the March 19 incident, the defendant said he was looking for a firearm for himself, and agreed to sell one to the UC if he comes across one. During the April 1 encounter, the defendant stated that he had a million dollars' worth of the methamphetamine. On one occasion later in April, however, the defendant sold counterfeit methamphetamine to the UC. Methamphetamine is a Schedule II controlled substance, meaning that it has a high potential for abuse, and that use can lead to severe physical and psychological dependence. The defendant faces a statutory maximum of life in prison for this misconduct, because of the large amount of methamphetamine that was distributed to the UC.[3]

The defendant resisted arrest when the FBI apprehended him at an apartment on the morning of June 6, 2019. He threatened to kick out the windows of a law enforcement vehicle. In

---

3 The defendant is charged by indictment with four criminal counts: (1) unlawful distribution of more than five grams of methamphetamine (21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii)); (2) unlawful distribution of more than fifty grams of methamphetamine (21 U.S.C. §§ 841(a)(1) and (b)(2)(A)(viii)); and (3) two counts of using a cell phone to facilitate a drug trafficking felony (unlawful distribution of more than five grams of methamphetamine (21 U.S.C. § 843(b).

3

a post-arrest interview, the defendant admitted that he had distributed methamphetamine on at least some occasions. The defendant also stated that he doesn't reside at the address where he was arrested, indicating instead that he was homeless. (A family member also told the FBI that the defendant was transient and does not live at the residence where he was arrested on a regular basis.) With respect to ISIS, the defendant told the FBI in the post-arrest interview that he thinks the terrorist organization is wicked, and that he watches the propaganda videos because he likes to see the action. Later that day, however, was the initial appearance in this Court where the defendant disobeyed the instruction to raise his right hand, and instead lifted a single index finger invoking a symbol of support for ISIS.

## APPLICABLE LAW

Generally, a defendant must be detained pending trial if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). A finding of either risk of flight or danger is sufficient for detention. *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2nd Cir. 1995). At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In situations such as this, however, where a defendant faces charges under the Controlled Substances Act with statutory maximum penalties of more than 10 years of incarceration, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). That presumption may be rebutted by the defendant. *Id*.

In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required,

the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).  As set forth more fully below, these factors weigh heavily in favor of detaining the defendant.

## ARGUMENT

### The Defendant Should Be Detained Pending Trial Because He Poses a Danger to the Community and a Substantial Risk of Flight

Pretrial detention is necessary to ensure both the safety of the community and that the defendant does not flee to evade prosecution.  The law requires the Court to presume that there are no release conditions that could adequately protect the community and ensure the defendant's presence for trial.  There is no basis for that presumption to be rebutted here.

**A.     The nature and circumstances of the offense**

The nature and circumstances of the offense weigh in favor of detention for several reasons.

The grand jury found probable cause to believe that the defendant committed serious felony drug distribution offenses.  Methamphetamine is a dangerous drug with high potential for abuse and dependence. The offenses were committed in a brazen manner during daylight hours, and the defendant distributed large quantities of methamphetamine.  The charges therefore expose the defendant to the potential for a lengthy term of incarceration, including the possibility of a life sentence.  The defendant faces a mandatory minimum term of ten years of incarceration.  This level of criminal exposure in this case creates a significant incentive for the defendant to flee to evade prosecution.  *See, e.g.*, *United States v. Anderson*, 382 F. Supp. 2d 13, 15 (D.D.C. 2005) (citing "maximum penalty of 23 years" in support of detention).

**B.  The weight of the evidence against the defendant**

There is strong evidence of the defendant's guilt, including the hidden camera video footage of the drug distribution where the defendant's face is clearly visible in the UC's car. The defendant admitted that he distributed methamphetamine as charged in a post-arrest interview after waiving *Miranda* rights.

**C.  The history and characteristics of the Defendant**

The defendant's history and characteristics must cause great concern for the safety of the community if released, and indicate that the defendant is a flight risk. The defendant has spread ISIS propaganda to members of the public, and told the FBI that he has communicated with an ISIS recruiter online. It is well known to the public that ISIS has in the past recruited foreigners to travel abroad to join its terrorist jihad. The defendant has a history of making firearms-related threats to kill, and posted a photograph of himself with a firearm on social media. During prior encounters with law enforcement, the defendant made threats to kill police and expressed the hope that people from overseas will come and kill all of them.

The defendant has no stable residence, and by his own admission is homeless. He is also unemployed.

The defendant has a long history of arrests and criminal convictions. By our count he has been arrested at least eight times over the past five years. Despite being given second chances through diversion programs, the defendant is consistently unable or unwilling to remain in compliance with the law. He has a history of noncompliance with judicial supervision.

**D. The nature and seriousness of the danger to any person or the community posed by the person's release**

At bottom, what the Court confronts here is a defendant with a deeply disturbing past: (1) spread of ISIS propaganda; (2) professed online contact with purported terrorist organization

recruiters; (3) threats to kill using firearms; (4) access to firearms; (5) lengthy arrest history; (6) unwillingness to comply with terms of court-ordered supervision; and (7) serious criminal charges with possibility of a lifetime term of incarceration.  ISIS is a terrorist organization that encourages followers and devotees to conduct small and large casualty terrorist attacks throughout the world.  The seriousness of the danger to the community if the defendant is released cannot be overstated under these circumstances.  There are obviously no release conditions that can ensure the safety of the community, and certainly no facts sufficient to rebut the presumption of detention that the law requires.

## CONCLUSION

The Court should order the defendant detained pending trial.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
for the District of Columbia

By:  _____/s/_____
MICHAEL J. FRIEDMAN
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-6765
michael.friedman@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on June 10, 2018, a copy of the foregoing Memorandum was sent via email to counsel for the defendant.

                                        /s/
                                  Michael J. Friedman
                                  Assistant U.S. Attorney